IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

NICOLE LYNN DAVIS,        )
                                 )
      Plaintiff,          )
                                 )
      v.               )       Case No. 1:13-cv-768 (GBL/IDD)
                                 )
CAROLYN W. COLVIN,      )
COMMISSIONER OF SOCIAL SECURITY,  )
                                 )
      Defendant.        )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff Nicole Lynn Davis' objections to Magistrate Judge Ivan D. Davis' May 21, 2014 Report and Recommendation to affirm the Commissioner's decision denying social security disability benefits to Plaintiff. (Doc. 24.) The Court ADOPTS the Magistrate Judge's Report and Recommendation because the Administrative Law Judge's decision is supported by substantial evidence and applies the proper legal standard. Therefore, Defendant's Motion for Summary Judgment (Doc. 19) is GRANTED, Plaintiff's Motion for Summary Judgment (Doc. 12) is DENIED, and Plaintiff's Motion for Remand (Doc. 13) is DENIED. Accordingly, the Commissioner of the Social Security Administration decision to deny Social Security supplemental income is AFFIRMED.

## I.    BACKGROUND

On September 2, 2009, Nicole Lynn Davis ("Plaintiff") filed an application for disability insurance benefits ("DIB") with the Social Security Administration ("SSA") under Title II of the Social Security Act. (Doc. 23, at 1.) In her application, Plaintiff alleged that, she became disabled and unable to work on April 3, 2009 because she has bipolar disorder, three herniated discs in her back, fibromyalgia, and other mental impairments. (Administrative Record ("R"), at

78, 165.) The Commissioner of Social Security denied Plaintiff's application for benefits, and that denial was affirmed upon reconsideration. (Doc. 23, at 2.) As a result, Plaintiff sought and received a hearing before a Social Security Administrative Law Judge ("ALJ") on January 3, 2011. (*Id.*) On February 9, 2012, the ALJ issued a decision denying Plaintiff's Supplemental Security Income claims. (*Id.*) The ALJ found that Plaintiff's residual functional capacity was that Plaintiff can lift and carry five pounds frequently and ten pounds occasionally, cannot work above shoulder level, can occasionally climb ramps and/or stairs, and that she can perform simple routine tasks that do not require interaction with the public or more than occasional interaction with peers and supervisors. (R. at 23.) The ALJ found that Plaintiff was capable of performing unskilled sedentary jobs, such as administrative support, addresser, document preparer, and surveillance system monitor, thousands of which positions exist locally based on her residual functional capacity and the testimony of a vocational expert. (*Id.* at 27–28.) On April 22, 2013, the SSA's Appeals Council, the final review within the agency on Plaintiff's claims, reviewed and rejected Plaintiff's appeal. (Doc. 23, at 2.)

Plaintiff has exhausted all administrative remedies within the SSA and she has filed this Complaint with the Court seeking review of the ALJ's opinion. (*Id.*) On October 24, 2013, Plaintiff filed a Motion for Summary Judgment, and in the alternative a Motion for Remand (Docs. 12–13). On November 12, 2013, Defendant filed a cross Motion for Summary Judgment. (Doc. 19.) The parties waived oral argument on the pending motions. (Doc. 16; Doc. 21.) On May 21, 2014, Magistrate Judge Davis filed his Report and Recommendation ("R & R") with the Court, recommending that this Court affirm the ALJ's opinion. (Doc. 23.) On June 5, 2014, Plaintiff filed objections to the R & R (Doc. 24), and on June 13, 2014 Defendant replied. (Doc. 25.)

2

## II.    STANDARD OF REVIEW

When considering a party's objections to a Magistrate Judge's R & R, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") (quoting 28 U.S.C. § 636(b)(1)(C)).  Under *de novo* review, the district court may "accept, reject or modify the report in whole or in part, and may recommit the matter to the magistrate judge with instructions" since the report and recommendation holds no "presumptive weight." *Halloway v. Bashara*, 176 F.R.D. 207, 209–10 (E.D. Va. 1997).  Additionally, the district judge must "give fresh consideration" to the pertinent issues objected to in the report and recommendation. *United States v. Raddatz*, 447 U.S. 667, 675 (1980).

In reviewing an administrative finding of no disability, the district court's primary function is to determine "whether the ALJ's decision was supported by substantial evidence" and whether the proper legal standard was followed. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, [where] it consists of more than a mere scintilla of evidence but may be less than a preponderance." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If there is substantial evidence, the Court is not to re-weigh the evidence, nor should the Court substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Richardson*, 402 U.S. at 390.

## III.  ANALYSIS

The Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment because, despite Plaintiff's two objections regarding the treating physician rule and credibility, the Court finds there is substantial evidence to support the conclusion of no disability.  The issue before the Court is to determine whether there is substantial evidence that supports the ALJ's finding that Plaintiff was not disabled from April 3, 2009, her alleged onset date, through September 30, 2010, her date last insured. Plaintiff makes two objections in seeking review of the ALJ's decision.  Plaintiff's first objection consists of two arguments: (1) The ALJ failed to follow the treating physician rule, and that (2) the ALJ failed to properly determine Plaintiff's residual functional capacity ("RFC").  Plaintiff's second objection is that the ALJ failed to evaluate her credibility properly.

### A. Treating Physician Rule

The Court rejects Plaintiff's argument that the ALJ did not follow the Treating Physician Rule because the ALJ provided substantial evidence to support why he gave some weight rather than controlling weight to the treating physician's opinions.  For the first objection, Plaintiff makes two arguments. First, Plaintiff argues that the ALJ failed to follow the Treating Physician Rule.  Under the Treating Physician Rule, generally, more weight is given to the treating sources if the "nature and severity of the impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). A treating physician's opinion is not given controlling weight if the opinion is not supported by relevant evidence or if it is inconsistent with the record.  20 C.F.R. § 404.1527(c)(3)-(4); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). If the ALJ decides that the opinion of the treating physician should not

4

be given controlling weight, he is to decide how much weight to give the opinion and provide "specific reasons" for the weight given. *Hunter v. Sullivan*, 993 F.2d 31, 35–36 (4th Cir. 1992). In deciding what weight to give to a medical opinion, the following five factors are considered: (1) the examining relationship, (2) the treatment relationship, (3) supportability, (4) consistency, and (5) specialization. 20 C.F.R. § 404.1527(c).

The ALJ found that the opinions of Dr. Bahadori and Dr. Kent were inconsistent with one another and with the record since their opinions state that Plaintiff needs to take frequent breaks and have excessive absenteeism from work when the evidence states otherwise. (R. at 26.) As a result, the ALJ gave each of their opinions some weight instead of controlling weight because of the internal inconsistencies. *(Id.)* In response, Plaintiff argues that the differences between the two doctors' opinions are only *de minimis* and the treating physicians' opinions should be given controlling weight, particularly because neither opinion is consistent with the ability to perform sedentary work. (Doc. 24, at 2.) Plaintiff further asserts that these treating physicians' opinions should have been given controlling weight since neither the ALJ nor the Magistrate Judge identified other better supported medical opinions or other persuasive evidence that establishes Plaintiff can perform full-time work. *(Id.* at 4.) The Court rejects Plaintiff's arguments for a number of reasons.

First, the regulations, as previously noted, state that when there are inconsistencies with a treating physician's opinion, then it is not to be given controlling weight. 20 C.F.R. § 404.1527(c)(3)-(4). Second, the ALJ found that the opinions of Dr. Bahadori and Dr. Kent were inconsistent with one another. (R. at 25–26.) Dr. Bahadori found that Plaintiff could lift and carry up to five pounds, sit thirty minutes a day, and could stand and walk up to two hours a day. *(Id.* at 25.) However, Dr. Kent found that Plaintiff could lift and carry five pounds frequently

5

and ten pounds occasionally, sit up to an hour a day, and could stand and walk up to one hour a day. (*Id.* at 26.) This demonstrates inconsistencies that allow the ALJ to determine how much weight is to be given to opinions. Third, the fact that both of the opinions are contrary to the record is also another reason why the opinions should not be given controlling weight. Dr. Bahadori and Dr. Kent's opinions state that Plaintiff had disabling physical limitations, but, as reflected in the record, Plaintiff never required any inpatient hospitalization or surgeries and only needed treatment through conservative measures. (*Id.* at 24.) Furthermore, their opinions are inconsistent with Plaintiff's testimony about her daily activities as well, such as driving, shopping, working out at the gym, taking care of herself and her children, performing household chores, preparing meals, attending her nephew's game, and practicing Tai Chi. (*Id.* at 22, 25.) Nonetheless, although the ALJ did not give the treating physicians' opinions controlling weight, he gave both opinions at least some weight. Additionally, when the ALJ decided to give both opinions some weight, he considered the factors set out in 20 C.F.R. § 404.1527(c) and provided specific reasons for why the two opinions deserved some instead of controlling weight. (*Id.* at 23.) Thus, Dr. Bahadori and Dr. Kent's opinions are not to receive controlling weight since they are inconsistent with each other and with the record.

Additionally, the ALJ found that Dr. Berger's opinion should not receive controlling weight because it contained a diagnosis and related limitations that were not necessarily present during Plaintiff's alleged onset date and date last insured since Dr. Berger did not began treating Plaintiff until after her date last insured. (*Id.*) Plaintiff asserts that Dr. Berger's opinion should not have been rejected by the ALJ. (Doc. 24, at 5.) Plaintiff also states that the fact that Dr. Berger began treating Plaintiff after her date last insured does not mean that the limitations do not apply to the earlier time period. (*Id.*) The Court rejects Plaintiffs arguments for two reasons.

6

First, Plaintiff's assertion that the ALJ rejected Dr. Berger's opinion is inaccurate because the ALJ did not reject the opinion, he gave it some weight. (R. at 26.)

Second, Dr. Berger's evaluation reflects her opinion of Plaintiff's condition between June 2011 and September 2011 because Dr. Berger did not start treating Plaintiff until a year after the insured period at hand. (*Id.*) In support of her objection, Plaintiff cites two Fourth Circuit cases in an effort to show that the Fourth Circuit supports the use of evidence that post-dates the date last insured. *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012); *Wilkins v. Sec., Dept. of Health and Human Servs.*, 953 F.2d 93 (4th Cir. 1991). However, these cases are distinguishable from the case at hand. In both of these cases, the treating physicians specifically catered their evaluations to reflect their opinions about the claimants during the time they were insured. *See Wilkins*, 953 F.2d at 95 (the doctor observed claimant in 1981 and then not again until 1986; the doctor stated in her opinion that claimant had the same symptoms from 1981, and from the nature of claimant's illness she was disabled as of at least December 31, 1986); *Bird*, 699 F.3d at 339 (although claimant's onset date and date last insured was between January 1, 2001 and March 31, 2005, doctor notes from 2007 stated that the claimant "has a long history of anger management problems" and that he "quit going around people in 2001").

These types of statements are not present in Dr. Berger's evaluation. Dr. Berger's evaluation only discusses her opinion about Plaintiff's condition at the time she observed her. There is no evidence that Dr. Berger intended for her opinion to apply to a year prior, during Plaintiff's insured period. (R. at 26.) Furthermore, Plaintiff has failed to acknowledge the fact that although Dr. Berger's opinion occurred almost a year after her date last insured, the ALJ still gave the opinion some weight. (*Id.*) Thus, since the opinion only addresses the condition of Plaintiff between June 2011 and September 2011, and there is no evidence that Dr. Berger

7

intended for her opinion to cover the time period when Plaintiff was insured, April 3, 2009 to September 30, 2010, the ALJ's decision to afford the opinion some weight instead of controlling weight was proper.

The second argument Plaintiff raises regards the ALJ's conclusions about her RFC. The RFC, which is used to determine if one is disabled, is the most one can do despite their limitations, and is assessed based on all relevant evidence in the case record. 20 C.F.R. 404.1545(a)(1). In order to determine a RFC one must go through a five step sequential evaluation process, which also determines whether disability is established or not. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The five step process determines: (1) if you are working, (2) if you have a severe impairment(s), (3) whether your impairment(s) meets the criteria of an impairment, (4) whether your impairment(s) prevents you from doing past relevant work (also known as the RFC), and (5) whether your impairment(s) prevents you from doing other work. *Id.* Thus, even if one's impairments prevent them from doing past relevant work, if they are still able to perform other jobs they will not be considered disabled. *See Horner v. Astrue*, No. 1:08-cv-0152, 2009 WL 394410, at *2 (E.D. Va. Feb. 17, 2009) ("[a]fter considering Plaintiff's age, education, work experience and residual functional capacity, the ALJ found that while Plaintiff was unable to perform any of his past relevant work, he was capable of performing unskilled light jobs as well as unskilled sedentary jobs.").

The ALJ meticulously followed the five step process to determine Plaintiff's RFC. Plaintiff asserts that the ALJ failed to cite to any specific evidence to support the RFC conclusions that Plaintiff's pain was adequately relieved with treatment or was only sporadic.[1]

_____

[1] Plaintiff also questioned the ALJ's qualifications regarding his ability to properly interpret her course of treatment and examination findings since these are medical findings.

(Doc. 24, at 3.) Plaintiff's contention is directly rebutted by the record. Dr. Bahadori noted that Plaintiff reported that there were improvements in her symptoms with her prescribed medications. (R. at 404.) Furthermore, the ALJ noted that Plaintiff's testimony regarding her symptoms were out of proportion to the medical evidence. (*Id.* at 24.) For example, the ALJ noted that Plaintiff's complaints of pain in her upper back and neck, swelling in her hands, and muscle and joint aches are not as severe or limiting as alleged due to Plaintiff's admitted daily activities, i.e. shopping, driving, working out at the gym, taking care of herself and her children, preparing meals, doing household chores, practicing Tai Chi, attending her nephew's games. (*Id.* at 22, 24–25.) The fact that Plaintiff's symptoms improve with treatment, and the fact that Plaintiff's testimony is inconsistent with the medical record are relevant evidence necessary to determine Plaintiff's RFC. Thus, since the ALJ assessed Plaintiff's RFC on this information and on all relevant evidence in the case record, as required in the regulations, the Court finds that substantial evidence supports the ALJ's findings.

Plaintiff also asserts that there is no evidence that the activities performed by Plaintiff on a daily basis are equivalent to working a full-time job. (Doc. 24, at 3.) Contrary to Plaintiff's assertions, the ALJ determined that Plaintiff is capable of performing tasks required at some places of employment. Here, the ALJ determined that although Plaintiff was unable to perform past relevant work, she is able to perform unskilled sedentary jobs. (R. at 27–28.) The various assessments of Plaintiff established that she had mild restrictions regarding daily living activities, and moderate difficulties in social functioning. (*Id.* at 22.) Despite the fact that Plaintiff has stated that she had moderate difficulties regarding concentration, persistence, or pace, she is able to take care of herself and her children, watch television, drive, shop, attend her nephew's games,

---

(Doc. 24, at 7.) However, 20 C.F.R. § 1546 explicitly states that the ALJ is the one responsible for assessing the RFC. 20 C.F.R. § 1546(c).

work out at the gym, practice Tai Chi, and read and write books all day. (*Id.* at 22, 25.) This further demonstrates the inconsistencies with Plaintiff's testimony and the medical findings, where both have been taken into consideration by the ALJ in determining Plaintiff's RFC. During the hearing before the ALJ, a vocational expert (VOC. EX.) explicitly testified about what jobs exist in the market for someone in Plaintiff's condition:

> ALJ: Okay. I'm going to give you a hypothetical. For the purposes of the hypothetical I want you to assume the age, education, and work experience of the claimant. I want you to assume because of a combination of impairments, she can lift five pounds frequently, ten occasionally, sit six hours, stand and walk two. She would require a sit/stand option two minutes in place each hour, no negotiations of ladders, ropes, and scaffolding. Her ability to crawl, crouch, kneel, and stoop occasional, no work above shoulders, gross and fine dexterity limited to occasional. I'm going to change that to frequent, not constant.

> VOC. EX.: With fine and gross manipulation?

> ALJ: Right. She's limited to simple, routine tasks, no job requiring interaction with the public, interaction with group − with peers and supervisors occasional. Based on that hypothetical could she perform any of her past relevant work?

> VOC. EX.: No, sir.

> ALJ: Are there any other jobs in the national economy that she could perform?

> VOC. EX.: Yes, sir. Sedentary, unskilled work available to such a hypothetical individual would administrative support activities such as an addresser. The <u>DOT</u> is 209.587-010. There are approximately 70,000 such positions in the national economy and some 1,200 regionally. Also work as clerking positions such as a document preparer. <u>DOT</u> is 249.587-018. There's approximately 50,000 in the national economy, 1,000 regionally, and if I didn't say so the region is the state of Virginia, and also work as a film inspector. <u>DOT</u> is 726 − I'm sorry. That's inappropriate with the limitations in reaching and handling − work as a surveillance system monitor, 379.367-010, 85,000 in the national economy, 2,000 regionally. These are representative examples of sedentary, unskilled work that are consistent with the descriptions provided in the <u>Dictionary of Occupational Titles</u> with the exception of the sitting and standing limitation. Such a limitation is not described or discussed in the <u>Dictionary of Occupational Titles</u>, however, based on my knowledge, understanding, and experience with job tasks and job functions and the way work is typically performed, such a limitation would not preclude successful performance.

(*Id.* at 69–70.)

Therefore, this is evidence in the record that shows, considering Plaintiff's condition, that there are jobs in the market for her. Hence, the ALJ's findings regarding Plaintiff's RFC are supported with substantial evidence.

### B. Plaintiff's Credibility

The Court rejects Plaintiff's second objection that the ALJ failed to properly evaluate her credibility because the ALJ provided substantial evidence to show how Plaintiff's testimony regarding the severity of her symptoms is inconsistent with the record.   In determining credibility, ALJs often rely on claimants' testimony as evidence regarding the severity of their symptoms. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).   Accordingly, "[o]nce an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, the [ALJ] must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence." *Hyatt v. Sullivan*, 899 F.2d 329, 337 (4th Cir. 1990).   Hence, an ALJ's credibility determination should be accepted by the reviewing court, except in those instances when "a credibility determination is unreasonable, contradicts other findings of fact, or is based on inadequate reason or no reason at all." *Sam's Club, a Div. of Wal-Mart Stores, Inc. v. Nat'l Labor Relations Bd.*, 173 F.3d 233, 240 (4th Cir. 1999)(quoting *Nat'l Labor Relations Bd. v. CWI of Md., Inc.*, 127 F.3d 319, 326 (4th Cir. 1997)).

After consideration of Plaintiff's physical and mental impairments, Plaintiff's testimony, and the record as a whole, the ALJ found that Plaintiff's testimony was not credible.  (R. at 23–25.) Plaintiff objected to this finding by citing to *Little v. Colvin* (Doc. 24, at 8–9) in an effort to demonstrate that the ALJ did not meet the "duty to explain" nor consider all of the evidence prior

to making his credibility determination of Plaintiff's testimony. No. 2:12cv300, 2013 WL 2489173 (E.D. Va. June 7, 2013). Plaintiff asserts that the ALJ used "boilerplate language" that compared Plaintiff's credibility against a pre-determined RFC finding. (Doc. 24, at 8–9.) Here, unlike the ALJ in *Little*, the ALJ provided extensive discussion and support for his conclusion regarding Plaintiff's credibility. (R. at 23–25.)

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her alleged symptoms are not credible because they are not reflective of Plaintiff's physical or mental impairments nor are they reflective of Plaintiff's admitted daily activities. (R. at 24.) Plaintiff asserts that her lack of inpatient treatment and conservative treatment measures are not sufficient to discredit her testimony because her fibromyalgia did not require such treatment, nor is the range of daily activities Plaintiff engages in sufficient to discount the severity of her impairments. (Doc. 24, at 8.) However, it should be noted that one who suffers from fibromyalgia is not necessarily disabled. *See Simonin v. Astrue*, No. 3:10–2808–JFA–JRM, 2012 WL 988049, at *7 (D.S.C. Feb. 27, 2012) ("[a] diagnosis of fibromyalgia is not disabling, *per se*") (emphasis in original). Furthermore, the ALJ noted that Plaintiff's daily activities, including grocery shopping, light household chores, working out at the gym, practicing Tai Chi, and driving a car, are not consistent with an individual who suffers from incapacitating symptoms or someone who is unable to concentrate. (R. at 24–25.) The ALJ may consider Plaintiff's daily activities to better assess her credibility. 20 C.F.R. § 404.1529(c)(3) (stating, "[s]ince symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit . . . relevant to your symptoms, which include: (i) Your daily activities . . ."). Thus,

since Plaintiff's daily activities are not reflective of one with debilitating symptoms, the ALJ properly took Plaintiff's daily activities into consideration regarding her credibility.

The ALJ also had significant discussions about Plaintiff's physical and mental impairments. (*Id.* at 21–27.) Regarding Plaintiff's physical impairments, for instance, the ALJ found that Plaintiff's complaints about her physical pain were out of proportion with the medical evidence. (*Id.* at 24.) Furthermore, the ALJ stated that Plaintiff's daily activities do not support her complaints that her physical impairments were as severe or limiting as alleged. (*Id.*) With respect to Plaintiff's mental impairments, the ALJ pointed out how Plaintiff was coherent, her cognitive function was normal, and that her behavior was within normal limits, noting that there was no evidence of paranoia or an inability to leave her home unaccompanied. (R. at 25.) The ALJ also noted that Plaintiff admits that she is able to read books all day long. (*Id.* at 22.)

Therefore, the decision rendered in *Little* is inapplicable here since the ALJ did consider all the evidence prior to making his credibility determination and provided substantial evidence to support his findings. (*Id.* at 23–25.) Thus, since the ALJ provided substantial evidence to support his decision, then his determination of credibility is upheld.

## IV.    CONCLUSION

The Court holds that the ALJ's decision is supported by substantial evidence because the ALJ gave the appropriate weight to the treating physicians, properly evaluated Plaintiff's residual functional capacity, and accurately assessed Plaintiff's credibility. Therefore, the Court ADOPTS the Magistrate Judge's Report and Recommendation upholding the ALJ's decision. (Doc. 23.) Defendant's Motion for Summary Judgment (Doc. 19) is GRANTED. Plaintiff's Motion for Summary Judgment (Doc. 12) is DENIED. Plaintiff's Motion for Remand (Doc. 13)

is DENIED.   Accordingly, Defendant's decision to deny supplemental security income is AFFIRMED.

**IT IS SO ORDERED.**

ENTERED this *18th* day of August, 2014.

Alexandria, Virginia

8/18/2014

_____/s/_____
Gerald Bruce Lee
United States District Judge